882 P.2d 978

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ray Glen ELLIOTT, Defendant–Appellant.**

**No. 20724.**

Court of Appeals of Idaho.

Aug. 31, 1994.

Petition for Review Denied Nov. 3, 1994.

Timothy L. Felton, Weiser, for appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

Ray Glen Elliott appeals his convictions and sentences for manufacturing a controlled substance, I.C. § 37–2732(b), and failure to affix drug tax stamps, I.C. § 63–4206(2). He argues that his constitutional right to be present at his trial was violated on the second day of trial when the court ordered that the trial continue even though Elliott was then absent. Elliott also argues that his

motion to disqualify the presiding judge prior to sentencing was erroneously denied and that he should be resentenced by a different judge. We conclude that Elliott voluntarily absented himself from his trial, thereby waiving the right to be present. We also hold that the district court properly denied the motion to disqualify. Therefore, the judgment of the district court is affirmed.

## I. BACKGROUND

Elliott was charged with manufacturing a controlled substance by cultivating marijuana plants, and with failing to affix drug tax stamps to the product. He was released on bond pending the outcome of his trial. The trial began on October 13, 1992, at 9:00 a.m., at which time Elliott was present and represented by counsel. The trial recessed at 5:00 p.m., and Elliott was informed that it would resume at 9:00 a.m. the following day. When the court convened the next morning, Elliott was not present. The court recessed and asked defense counsel as well as Elliott's friends and relatives in the courtroom whether they knew the reason for his absence or where he could be found. The court also directed the sheriff to search for Elliott. Upon resuming the proceedings more than an hour later, the court stated that efforts to locate the defendant had failed, that the court considered Elliott's absence to be voluntary and intentional, and that the trial would resume. The defense attorney moved for a mistrial, averring that Elliott's absence would prejudice the jury. The court denied the motion, and the jury later returned guilty verdicts on both charges.

Elliott remained at large for five months. Upon his eventual re-arrest, Elliott was sentenced to concurrent prison terms of not less than three years nor more than five years and was fined $1,500. Prior to sentencing, Elliott filed a motion to disqualify the presiding judge pursuant to I.C.R. 25(b)(4) due to his alleged bias against Elliott. The district court denied the motion.

Elliott now contends that remarks by the judge at the end of the first day of trial convinced Elliott that he was not receiving a fair trial and that he had no choice but to flee. He asserts that his absence during the remainder of the trial was therefore involuntary and that the court's decision to complete the trial without Elliott being present, and without conducting an adequate inquiry into Elliott's whereabouts or the reasons for his absence, violated Elliott's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 13 of the Idaho Constitution. In addition, he complains that his motion for disqualification of the district judge was improperly denied.

## II. VOLUNTARINESS OF THE DEFENDANT'S ABSENCE

■ The right of an accused to be present at trial is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments and the Confrontation Clause of the Sixth Amendment to the United States Constitution. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). This right is also conferred by Article I, Section 13 of the Idaho Constitution.

■ In Idaho, as in the Federal system, this right is further assured through provisions in the criminal rules. Idaho Criminal Rule 43 provides in pertinent part:

(a) Presence required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) Continued presence not required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived defendant's right to be present whenever a defendant, initially present:

(1) Is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)....

This rule, which is virtually identical to the corresponding federal rule, essentially codifies the constitutional principle enunciated in *Diaz v. United States*, 223 U.S. 442, 32 S.Ct.

**326**

250, 56 L.Ed. 500 (1912), that a defendant may waive the right to be present by voluntarily absenting himself during the trial. *Crosby v. United States,* —— U.S. ——, ——, 113 S.Ct. 748, 751, 122 L.Ed.2d 25, 31 (1993). Underlying this rule is the premise that a defendant who is at large should not "be at liberty, whenever he please[s], to withdraw himself from the courts of his country and to break up a trial already commenced," *Diaz,* 223 U.S. at 457, 32 S.Ct. at 254.

■ The question presented, therefore, is whether Elliott was voluntarily absent and thereby waived his right to be present on the second day of trial. Because the waiver of a constitutional right is at issue, we conduct an independent review on appeal based upon the totality of the circumstances. *State v. Buzo,* 121 Idaho 324, 327, 824 P.2d 899, 901 (Ct. App.1991); *State v. Wuthrich,* 112 Idaho 360, 364, 732 P.2d 329 (Ct.App.1986); *State v. Blevins,* 108 Idaho 239, 243, 697 P.2d 1253, 1257 (Ct.App.1985).

■ Elliott contends that his absence on the second day of the trial was involuntary because statements by the judge during the first day convinced Elliott that he could not receive a fair trial, and he consequently decided to flee rather than appear for the remainder of the proceeding. Elliott's position is based upon the following colloquy, which occurred after the jury had left the courtroom at the end of the first day of trial:

COURT: I want to put something else on the record, too. Mr. Elliott, you better be careful of what you're saying to the jurors and the Court—we call those side-bar comments—because I can tell you right now little comments like "That's a lie" and shaking your head and making comments—

DEFENDANT: I didn't say anything.

COURT: Don't argue with me, Mr. Elliott. I'm putting something on the record.

DEFENDANT: (Nodding).

COURT: And don't sit there and deny that you did this. Today when Chuck Kroll [the prosecutor] was making his opening statement you had an outburst. You don't do that in this courtroom.

DEFENDANT: I didn't.

COURT: I told you to shut your mouth, Mr. Elliott. Get a jailer up here. If I have one more outburst from you you're going to jail. Do you understand? Do you understand, Mr. Elliott?

DEFENDANT: Yes.

COURT: All right. When Mr. Kroll was making his opening statement you had an outburst. I'm not going to tolerate that. I didn't say anything because I thought that would be the end of it. I gave you a dirty look. You saw the dirty look and you didn't do it anymore. Then when this witness was testifying you said and some other people in the audience section made some comments about "That's a lie" and other things. We're not going to tolerate that.

And I'll tell you what is going to end up happening to you. What's going to end up happening to you is this jury will take that against you. Now, if I have any more outbursts from you today or tomorrow the sheriff is in this courtroom now and he's instructed to put you in custody right then and there. Do you understand?

DEFENDANT: Yes, sir.

COURT: I don't tolerate that at all. See you at 9 o'clock tomorrow morning.

The defendant then left the courtroom and the following conversation occurred outside his presence:

COURT: Chuck, he was just behind you.

Mr. Kroll [prosecutor]: I know. That's why I stepped back because I was afraid he was going to go back after my witness here.

COURT: We might need an officer in this courtroom.

SHERIFF: Tomorrow?

COURT: This guy, I don't like his attitude or anything else.

SHERIFF: We'll be here.

Elliott asserts that the judge demonstrated prejudice toward him during this exchange and that Elliott's decision not to return for completion of the trial was consequently justified and involuntary.

Elliott's argument is meritless. It is not for a criminal defendant to unilaterally determine whether the conduct of his or her trial is fair and, concluding that it is not, to implement self-help measures by absconding. If a criminal trial is tainted by bias or unfairness the defendant should present the issue to the trial court and, if satisfactory redress is not provided, may seek relief through an appeal or an application for post-conviction relief. Allowing a defendant to prevent completion of the trial by simply fleeing whenever he or she becomes dissatisfied with the conduct of the judge would vest in defendants control over the schedules of the courts, prosecutors and jurors, and would substitute the subjective assessment of the defendant for the carefully crafted mechanisms provided by our legal system to safeguard the right of an accused to a fair trial. Accordingly, we do not accept Elliott's contention that his alleged fear of an unfair trial, prompted by the judge's words of admonition, justified his flight and made his absence from the trial involuntary.

### III. ADEQUACY OF THE COURT'S INVESTIGATION

Next, Elliott contends that regardless of the conclusion reached above, the district court erred in proceeding with the second day of trial because it did not first make a sufficient investigation into his reasons for being absent and the viability of rescheduling the trial. Relying on *United States v. Rogers*, 853 F.2d 249 (4th Cir.1988), *cert. denied*, 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988), Elliott contends that before continuing with a trial in the defendant's absence, a court must make the following inquiries: (1) where is the defendant; (2) why is the defendant absent; (3) what is the likelihood the trial could soon proceed with the defendant; (4) what is the difficulty of rescheduling; and (5) what is the burden on the government if the trial is rescheduled? *See Rogers*, 853 F.2d at 252. This test originated in cases where the defendant was not present at the commencement of trial. *See, United States v. Peterson*, 524 F.2d 167, 185 (4th Cir.1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Tortora*, 464 F.2d 1202, 1210 (2d Cir.1972). The *Rog-*ers decision, however, extended this test to a circumstance where the defendant became absent midway through the trial. In *Rogers*, the defendant was approximately fifty minutes late on the second day of trial. The court asked whether defense counsel knew the defendant's whereabouts and then resumed the trial without further inquiry. The Fourth Circuit Court of Appeals held that the trial court should have considered the five-factors test enunciated above before continuing with the trial. Because the trial court had investigated no further than to ask defense counsel about the defendant's absence, the Court of Appeals concluded that the decision to resume the trial was an abuse of the trial court's discretion.

Elliott urges that we adopt a similar principle, permitting a trial court to proceed without a defendant only when the five foregoing factors militate against rescheduling the trial. We decline to impose such a standard. First, as noted above, the five-part analysis adopted in *Rogers* originated in cases where the defendant was not present at the outset of the trial, unlike the instant case where Elliott disappeared after a full day of trial. This analysis appears to have been made obsolete by the United States Supreme Court's recent decision in *Crosby v. United States*, —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), which holds that a trial may never *begin* in the defendant's absence. Second, we find the *Rogers* analysis to be inconsistent with the plain language in I.C.R. 43, which provides that a trial may proceed if the defendant becomes voluntarily absent after the trial has commenced. The multi-faceted inquiry and balancing analysis required by *Rogers* is not necessary in order to answer the simple query under I.C.R. 43 as to whether the defendant's absence is voluntary. Finally, we note that as a practical matter, the five inquiries recommended by *Rogers* cannot be meaningfully addressed in circumstances where, as here, the defendant has simply disappeared without explanation. Since the court in this case could not determine where the defendant was or why he was absent, it could not have meaningfully evaluated the likelihood that trial could soon proceed with the defendant, the difficulty of

rescheduling or the burden imposed on the government by rescheduling.

■ We prefer instead the analysis of the Washington Supreme Court in *State v. Thomson*, 123 Wash.2d 877, 872 P.2d 1097 (1994). There the defendant, who was present for pretrial motions and the first day of trial, did not reappear for the remainder of the trial. The court recessed to allow the defense attorney to contact his client. Upon reconvening, the court found that Thomson's absence was voluntary, noting that over three hours had passed with no indication where Thomson was. Thomson, like Elliott in this case, urged the court to adopt the *Rogers* test and find that the trial court had not adequately considered alternatives before reconvening the trial. The Washington Supreme Court rejected that analysis and held that the trial court need only: (1) make sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) make a preliminary finding of voluntariness, when justified, and (3) afford the defendant an adequate opportunity to explain the absence when the defendant is returned to custody and before sentence is imposed. *Thomson*, 872 P.2d at 1100.

We agree with the Washington court. The procedure enunciated in *Thomson* amply protects the defendant's rights by assuring that the trial court will examine the circumstances of the defendant's absence before determining whether the absence is voluntary, and by providing the defendant an opportunity to explain his or her absence before judgment of conviction is formally entered. It allows the court to discontinue the trial if the voluntariness of the defendant's absence appears doubtful in light of all the circumstances.

In applying this three-prong test to the facts involved here, we conclude that the district court properly found that Elliott's absence was voluntary. The district court recessed the trial for over an hour while defense counsel and the sheriff attempted to locate the defendant. The court asked all present in the courtroom, including counsel, friends and family of the defendant, whether anyone knew his location or the reason for his nonappearance. The inquiry was thus directed to persons who most probably would have been informed if Elliott was ill or injured or was otherwise prevented from attending the trial. In the absence of any information from those sources or from the sheriff's search, the court could properly infer that Elliott's absence was voluntary. Any other conclusion would be based purely upon speculation. *See State v. Harris*, 291 Or. 179, 630 P.2d 332, 336 (1981) (where defense counsel had unsuccessfully searched for the absent defendant and contacted his family, a conclusion that the defendant's absence was involuntary would be based upon pure speculation that some force prevented the defendant from attending).

Before imposing sentence, the court gave Elliott an opportunity to explain his prior absence. As discussed in the preceding section, Elliott's response confirmed the court's initial conclusion that he departed voluntarily. Accordingly, we hold that the district court properly concluded that Elliott waived his right to be present at his trial. We find no error in the district court's decision to continue with the trial in Elliott's absence and to enter a judgment of conviction on the jury's verdict.

## IV. MOTION TO DISQUALIFY

■ Finally, Elliott challenges the denial of his motion to disqualify the district judge prior to sentencing. He contends that the comments excerpted above, coupled with Elliott's own testimony about the judge's alleged demeanor while informing the jury that the defendant had pleaded not guilty, proved that the judge was prejudiced toward Elliott. He argues that he is therefore entitled to be resentenced by a different judge.

■ A motion to disqualify a judge for cause in a criminal case is governed by I.C.R. 25(b), which provides in part:

"(b) Any party to an action may disqualify a judge or magistrate from presiding in any action upon any of the following grounds: . . .

(4) That judge or magistrate is biased or prejudiced for or against any party or that party's case in the action."

Disposition of such motions is within the sound discretion of the trial court. *Sivak v. State,* 112 Idaho 197, 206, 731 P.2d 192, 201 (1986); *State v. Saunders,* 124 Idaho 334, 336, 859 P.2d 370, 372 (Ct.App.1993). A motion for disqualification should be granted only where there is actual prejudice against the litigant of such a nature as to render it improbable that the presiding judge could or would give the litigant a fair and impartial trial. *Id., citing State v. Waterman,* 36 Idaho 259, 210 P. 208 (1922); *State v. Pizzuto,* 119 Idaho 742, 776, 810 P.2d 680, 714 (1991).[1]

To be disqualifying, the bias or prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Desfosses v. Desfosses,* 120 Idaho 27, 29, 813 P.2d 366, 368 (Ct.App.1991), quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Therefore, conclusions about the character of a defendant or the merits of his defense which arose during the trial and are based upon the evidence or the defendant's behavior are not a basis for disqualification.

It follows that, in order to prevail on his motion, Elliott must show that the district judge harbored preconceived conclusions or attitudes about Elliott's case and that this bias was based upon information from an extrajudicial source. Elliott's evidence does not meet this burden. The district judge's warning that Elliott would be jailed if he persisted in making outbursts during the trial, along with the judge's request that a sheriff's deputy be present during trial the following day, was a permissible exercise of the court's authority to maintain order and safety in the courtroom and to prevent disruption of the trial. See I.C.R. 43(b)(2); *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). Moreover, the judge's comments appear to have been intended in part to apprise Elliott that his behavior could stigmatize him in the eyes of the jury and damage his defense. Any disapproval of Elliott evidenced by the judge's remarks did not arise from an extrajudicial source but was borne of Elliott's histrionics during the trial. Elliott's further contention that the judge betrayed his bias at the beginning of the trial by smiling at the jurors when informing them that Elliott had pleaded not guilty was denied by the district judge and was also controverted by an affidavit of the prosecutor attesting that he had observed no looks, smiles or other facial expressions which would have suggested to the jury that the judge had an opinion concerning Elliott's guilt. In light of this record, we find no error in the denial of Elliott's motion to disqualify the district judge.

## V. CONCLUSION

The district court properly concluded that Elliott's absence during the second day of trial was voluntary; Elliott's right to be present during his trial was not abridged. The defendant's motion to disqualify the district judge based upon alleged bias was correctly denied. The judgment of the district court is affirmed.

WALTERS, C.J., and PERRY, J., concur.

1. The State points out a conflict in Idaho decisions as to whether disqualification is required when it would be "impossible" or merely "improbable" that the judge could be impartial. In *Waterman,* 36 Idaho at 264, 210 P.2 at 213, the Supreme Court utilized the "improbable" standard, but later in *State v. Lankford,* 113 Idaho 688, 747 P.2d 710 (1987), the Supreme Court stated that it must be "impossible" for the litigant to receive a fair trial. Then in *Pizzuto,* 119 Idaho at 776, 810 P.2d at 714, the Court used both standards, stating that the prospect of a fair trial must be improbable and yet, in the same paragraph, quoting the "impossible" language from *Lankford.* This Court has also at times utilized both of these conflicting standards. *See State v. Greathouse,* 119 Idaho 732, 737, 810 P.2d 266, 271 (Ct.App.1991) (using "impossible" standard) and *Saunders,* 124 Idaho at 336, 859 P.2d at 372 (applying "improbable" standard). We hereby resolve this conflict in favor of the "improbable" standard. We conclude that the improbability standard is more consonant with protection of the due process rights of litigants, and we deem it inappropriate for a judge to preside when it is improbable, though *possible,* that the judge's duties will be performed impartially and without bias.