952 P.2d 396

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael Allen WACHHOLTZ, a/k/a Jeffrey Lambert, Defendant–Appellant.**

Nos. 23107, 23108.

Court of Appeals of Idaho.

Jan. 29, 1998.

Gregory C. Dickison, Latah County Public Defender, Moscow, for Defendant–Appellant.

Alan G. Lance, Attorney General, John C. McKinney, Deputy Attorney General, Boise, for Plaintiff–Respondent.

LANSING, Judge.

This is a consolidated appeal from judgments of conviction and sentences for robbery and for aggravated assault upon a law enforcement officer. With respect to the robbery conviction, appellant Michael Allen Wachholtz argues that the district court committed error in denying his motions for a mistrial and his motion to be absent from the trial because he was allegedly suffering back pain, and in admitting testimony about Wachholtz's escape attempt. In both cases, the appellant urges that the sentences are unduly harsh. We find no error and, therefore, affirm.

## I.  FACTS AND PROCEDURE

On the morning of October 17, 1995, an armed robbery occurred at a Safeway store in Moscow, Idaho. The robber displayed a gun to the check-out clerk, Irma Tatman, and demanded money from the till. After receiving the money, he fled from the scene on foot. Police officers linked Wachholtz to the robbery and found him at a nearby motel. Wachholtz was charged with robbery, I.C. § 18–6501, and the information alleged that his sentence should be enhanced for use of a deadly weapon in the offense.

While incarcerated in the Latah County jail awaiting trial on the robbery charge, Wachholtz attacked a deputy in an escape attempt. Wachholtz struck the deputy on the head using a weapon made of two bolts tied together in a strip of cloth. Wachholtz's cellmate came to the deputy's aid, and Wachholtz was subdued. As a result of this incident, Wachholtz was charged with aggravated assault upon a law enforcement officer, I.C. §§ 18–901, –905, –915, to which he ultimately pleaded guilty.

During his jury trial on the robbery charge, Wachholtz made several oral motions for a mistrial. The court denied all of them. Wachholtz also made an oral motion requesting that the court allow him to be absent from the trial due to his alleged back pain. This motion was also denied. At the end of the trial, the jury found Wachholtz guilty of robbery and also found that he had used a deadly weapon during the robbery. The

court imposed a unified thirty-year sentence with a twenty-five year minimum term of imprisonment for the armed robbery, and a consecutive unified ten-year sentence with an eight-year minimum term of imprisonment for the aggravated assault on a law enforcement officer. Wachholtz now appeals, challenging the trial court's denial of two of his motions for a mistrial, the denial of his motion for leave to be absent from the trial, and the admission during the robbery trial of evidence of Wachholtz's escape attempt. He also challenges the sentences imposed in both cases.

## II.  ANALYSIS

### A.  First Motion for a Mistrial

On the morning that his trial was to begin, while Wachholtz was in the courthouse law library, a "stun belt" he was wearing accidentally activated. The electric shock caused him to scream. The incident occurred while potential jurors were assembled in the courtroom but before voir dire had begun. Apparently out of concern for Wachholtz, the court postponed the jury selection until the next day. The following morning, before beginning jury voir dire, defense counsel requested a mistrial, arguing that the potential jurors who were in the courtroom might have heard Wachholtz's scream and might be prejudiced against him as a result. The court denied the motion on the basis that Wachholtz had offered no evidence that the potential jurors actually heard the noise. The court stated that the motion could be renewed "if the record is made." When the panel of potential jurors were called, they were asked whether they heard anything out of the ordinary on the previous day which led them to speculate about the cause of the postponement of the trial. Only one potential juror said, "yes." This juror was eventually excused for other reasons. Defense counsel also asked some potential jurors on an individual basis whether they heard anything that caused them to speculate about the delay. None of them did. Defense counsel did not renew the motion for a mistrial but on appeal contends that the court erred in denying the motion that was made before the jurors were questioned.

■ In criminal cases, a defendant's motion for a mistrial is governed by I.C.R. 29.1(a), which provides in pertinent part, "A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." The decision whether to grant a mistrial rests within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *State v. Tolman,* 121 Idaho 899, 902, 828 P.2d 1304, 1307 (1992); *State v. Talmage,* 104 Idaho 249, 254, 658 P.2d 920, 925 (1983); *State v. Ramsbottom,* 89 Idaho 1, 10, 402 P.2d 384, 389 (1965). On appellate review our inquiry is whether the event which brought about the motion for a mistrial constitutes reversible error when viewed in the context of the entire record. *State v. Urquhart,* 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983).

In this case, we find no error. The defense provided no evidence that any juror was aware of—much less prejudiced by—the stun belt incident. Subsequent interrogation of the jury panel disclosed no evidence that any of those seated on the jury heard or was influenced by the event. In sum, the defense provided no evidence of prejudice or deprivation of a fair trial. Therefore, the district court properly denied Wachholtz's first motion for a mistrial.

## B. Second Motion for a Mistrial

■ During opening statements, Wachholtz again requested a mistrial. He asserted that he was unable to assist in his own defense because of back pain he was experiencing. The court denied this request because Wachholtz's behavior observed by the court contradicted his claim of serious pain and because Wachholtz offered no medical evidence to support his motion. After noting that Wachholtz did not appear to be in any pain and was able to lean over to discuss matters with his attorney during the trial, the court exhorted counsel to "get me medical testimony and I'll consider it." Wachholtz produced no evidence to counter the court's observations, and Wachholtz has not

identified any way in which his back pain impaired his ability to assist in his defense. Therefore, we conclude that the district court did not abuse its discretion in denying Wachholtz's second motion for a mistrial.

## C. Motion to be Absent from the Trial

Twice during the early stages of the trial Wachholtz sought the court's permission to leave the courtroom, ostensibly because he was in pain and wished to lie down. The pain from a previous back injury was exacerbated, Wachholtz said, by the stun belt incident. The prosecutor objected to this request, arguing that it was probably a ploy to avoid in-court identification by witnesses to the robbery. The trial judge denied Wachholtz's motion based on several factors. First, the judge explained that he had not seen any displays of pain or discomfort indicated in Wachholtz's movements. The judge noted that Wachholtz was able to lean over to confer with his attorney, take notes on a note pad, and bang on the bars of the courthouse holding cell. Additionally, the judge stated that he would not allow Wachholtz to absent himself and later claim that it was due to some conduct on the part of the State, and therefore involuntary under I.C.R. 43(b)(1). The court suggested, however, that Wachholtz could, if he wished, wait in the holding area of the courthouse and be brought back to the courtroom whenever the question of identification arose. Wachholtz apparently declined that offer.

■ Wachholtz now argues that he had a "right" to voluntarily absent himself from the trial by terms of I.C.R. 43(b)(1). We disagree. Rule 43 states in pertinent part:

(a) Presence required. The defendant *shall be present* at the arraignment, at the time of the plea, *at every stage of the trial* including the impaneling of the jury and the return of the verdict, and at the imposition of the sentence, except as otherwise provided by this rule.

(b) Continued presence not required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived defendant's

right to be present whenever a defendant, initially present:

> (1) Is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of *the obligation to remain during the trial*).... (Emphasis added.)

These provisions of the rule not only comport with a defendant's constitutional right to be present at trial but also express a defendant's obligation to do so. The italicized language contradicts Wachholtz's assertion that he had a right to stay away from the courtroom. The reference in I.C.R. 43(b)(1) to a defendant's voluntary absence from the trial does not establish a right to be absent but, rather, reiterates the holding in *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), that a defendant's voluntary absence after the trial has commenced is a waiver of the right to be present and does not prevent the continuation of the trial. *See also Crosby v. United States*, 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993); *United States v. Lumitap*, 111 F.3d 81 (9th Cir. 1997); *United States v. Durham*, 587 F.2d 799, 800 (5th Cir.1979); *United States v. Moore*, 466 F.2d 547 (3d Cir.1972); *United States v. Fitzpatrick*, 437 F.2d 19, 27 (2d Cir.1970); *State v. Elliott*, 126 Idaho 323, 325–26, 882 P.2d 978, 980–81 (1994).

■ On the other hand, it is within the trial court's discretion to grant a defendant's request to be absent from the trial. *Lumitap*, 111 F.3d at 83; *Durham*, 587 F.2d at 800. Therefore, we review the district court's denial of Wachholtz's motion for an abuse of discretion. In this case, we discern no such abuse. Wachholtz argues that he was prejudiced by the denial of the motion because "his display of back pain through his expressions and through his frequent movement created a negative perception in the minds of the jurors, which prejudiced them against him." However, as heretofore noted, Wachholtz's claim of debilitating pain was not substantiated by the court's observations of his behavior or by any medical evidence. Most importantly, the court gave Wachholtz the choice to rest in the holding area except when his presence was necessary for witness identification. Wachholtz's declination of this

offer tends to substantiate the prosecutor's suspicion that his true motivation was to avoid in-court identification. We conclude that the district court properly perceived the issue as being within its discretion and exercised its discretion soundly.

## D. Testimony Regarding Wachholtz's Escape Attempt

■ During the course of the trial, the State requested that the court make a ruling in limine as to the admissibility of proposed testimony from Joseph Tepner–Galland, Wachholtz's cellmate, who had helped subdue Wachholtz during his escape attempt. The State did not seek to introduce testimony regarding the attempted escape. Rather, the prosecutor sought authorization for Tepner–Galland to testify, *inter alia*, that Wachholtz had made statements admitting that he had robbed the Safeway store and statements that he planned to escape from the Latah County jail in order to find and harm Ms. Tatman, the Safeway clerk who was the State's chief witness against Wachholtz. The court held that Wachholtz's admission of the robbery and his statement that he planned to escape in order to harm Ms. Tatman were admissible, but the court sustained Wachholtz's objection to other evidence about his plan to steal a car.

Notwithstanding this favorable ruling, the prosecutor during direct examination did not question Tepner–Galland about Wachholtz's stated plan to escape or to hurt Ms. Tatman. Then, during defense counsel's cross-examination of Tepner–Galland, the following exchange took place:

Q Mr. Tepner–Galland, how is it that the prosecuting attorney found out that you were willing to testify about this? Did you go to them?

A Yes, I did.

Q And why did you go to them?

A Why did I go to them?

Q Shopping around for a deal to lessen your sentence in the federal charge?

Q No, there was some different circumstances that happened downstairs and I felt intimidated for one thing—from Mr. Wachholtz, and uh—after the · situation

happened downstairs I started having some death threats thrown my way and everything and I didn't want anything to do with the man and I didn't want him anywhere near me.

On re-direct examination, the prosecutor followed up on this line of inquiry:

Q Mr. Tepner–Galland, Mr. Mahaffy, on behalf of the Defendant, asked you why you came forward with the information about the Defendant's statements. And you indicated this was because of different circumstances downstairs. In all fairness to the jury, so that they understand those circumstances, would you please explain to them what happened downstairs in the jail that caused you to come forward with this information. And you may speak freely and openly about what occurred that caused you to come forward with this information.

Defense counsel objected to this question, but the trial court overruled the objection. The court held that the defense had "opened it up" by asking Tepner–Galland what caused him to decide to come forward. The witness then was allowed to describe the escape attempt and his role in helping subdue Wachholtz.

Wachholtz argues that the admission of this testimony amounted to a "reversal" of the trial court's earlier ruling on the State's motion in limine and that Wachholtz did not "open the door" to this field of inquiry on cross-examination.

Wachholtz's position is not sustained by the record. The testimony that Wachholtz challenges on appeal was not addressed by the court's ruling on the State's motion. That ruling was limited to evidence of Wachholtz's statements to Tepner–Galland. Tepner–Galland's testimony on redirect examination was about events he witnessed, not about Wachholtz's statements. Therefore, the district court's earlier ruling did not apply to the testimony challenged on appeal. Further, regardless of the scope of the district court's ruling in limine, defense counsel's cross-examination of Tepner–Galland raised the issue of the witness's motivation to testify against Wachholtz. Therefore, although evidence of Wachholtz's escape attempt might have otherwise been irrelevant, it became relevant to rehabilitate Tepner–Galland after defense counsel's effort to impeach his credibility.

### E. Sentence

Wachholtz received a unified ten-year sentence with an eight-year minimum term of confinement for the aggravated assault, and a unified thirty-year sentence with a twenty-five year minimum term for the armed robbery. The district court ordered that the sentences run consecutively. Wachholtz argues that these sentences represent an abuse of the district court's discretion.

Where a sentence is not illegal, an appellant has the burden to show that it is unreasonable, and thus a clear abuse of the trial court's discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989). A sentence may represent such an abuse of discretion it if is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). The reasonableness of a term of confinement must be measured against the sentencing goals of protecting society, deterrence, rehabilitation and retribution. *State v. Young,* 119 Idaho 510, 808 P.2d 429 (Ct.App.1991); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessive sentence, we conduct an independent review of the record, giving consideration to the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). For the purposes of appellate review, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Therefore, Wachholtz must establish that, under any reasonable view of the facts, a period of confinement of consecutive fixed terms totaling thirty-three years for aggravated assault on a law enforcement officer and armed robbery with a deadly weapon, with a firearm enhancement, was unreasonable.

In reviewing the record we are struck, as was the district court, with Wachholtz's lengthy criminal record. At only thirty-four years of age he had been previously convicted of approximately twenty-five criminal offenses, at least five of them felonies. The district court also properly viewed the present offenses as serious ones. Wachholtz not only saw fit to display a firearm in the perpetration of a robbery, he also committed a vicious attack on a law enforcement officer. According to Tepner–Galland's statement to the presentence investigator, Wachholtz attempted to enlist Tepner–Galland in a joint escape attempt, presenting a plan under which each of them would kill a deputy in order to effectuate the escape. The presentence investigator also received information from law enforcement officers in Alaska, where Wachholtz had previously been incarcerated, indicating that Wachholtz had made threats to kill police officers. Also indicative of his dangerousness was Wachholtz's reported intent to seek out and harm the Safeway clerk who would be the prosecution's key witness in the robbery case.

It is apparent from the sentencing transcript that the district court perceived Wachholtz as an extremely dangerous individual who must be segregated from society. In imposing sentence, the district court stated:

> In my opinion Mr. Wachholtz poses a severe threat to society. That is to other people.....
>
> I have had a number of—substantial number of people appear before me for sentencing but regardless of the charge that other people have appeared before me on, I've never had a Defendant who's to me a greater threat to the public that Michael Wachholtz.

Although Wachholtz asserts that the district court did not fully consider the goal of rehabilitation in imposing sentence, we think that the court's emphasis on the protection of society was not an abuse of discretion. Indeed, the primary goal of sentencing is the protection of society. *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956); *State v. Kern,* 119 Idaho 295, 297, 805 P.2d 501, 503 (Ct.App.1991); *Toohill,* 103 Idaho at 568, 650 P.2d at 710. Wachholtz has not met his burden to show that his sentences are unreasonable upon the facts of the case.

### III. CONCLUSION

The district court did not err in denying Wachholtz's motions for a mistrial or his motion for permission to be absent from the trial, nor was there error in the admission of trial testimony regarding Wachholtz's attempted jailbreak. Finally, we hold that the sentences imposed by the district court were not an abuse of discretion. The judgments of conviction and sentences are therefore affirmed.

PERRY and SCHWARTZMAN, JJ., concur.