**STATE of Minnesota, Respondent,**

v.

**Jason FINNEGAN, petitioner, Appellant.**

No. A08–0777.

Supreme Court of Minnesota.

June 30, 2010.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and David J. Hauser, Otter Tail County Attorney, Fergus Falls, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Leslie J. Rosenberg, As-

sistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

GILDEA, Justice.

This case is before us on review of the district court's denial of appellant Jason Finnegan's petition for postconviction relief. Finnegan contended in his petition that he was entitled to a new trial because a portion of his first trial was conducted in his absence. The postconviction court denied the petition, and the court of appeals affirmed. Because we conclude that Finnegan did not meet his burden to show that he was involuntarily absent, we affirm.

An Otter Tail County jury found Finnegan guilty of one count of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(c) (2008), and two counts of third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subds. 1(b), (c) (2006).[1] The evidence at trial established that at approximately 11:30 p.m. on February 4, 2005, then 14–year–old M.F. returned home from a high school dance with her sister and her sister's boyfriend. M.F.'s other sister, that sister's boyfriend, and Finnegan, a family friend, were all at M.F.'s home. After one of the couples left, those remaining congregated in the lower level recreation room of M.F.'s family home; all, except M.F., were drinking. Finnegan also smoked marijuana that evening.

By 12:30 a.m., both M.F.'s sisters and their boyfriends had gone to bed, leaving M.F. and Finnegan alone. M.F. fell asleep on a loveseat. About twenty minutes later, M.F. testified that Finnegan woke her up, wrapped his arm around her, pulled her to the floor, and told her to remove her pants. M.F. refused, but in response, Finnegan tightened his grip and threatened to break her neck if she did not remove her pants. Because of the pain in her neck, M.F. obliged, and then Finnegan sexually assaulted her.

M.F. subsequently reported the sexual assault to authorities, and Finnegan was charged. In August 2005, Finnegan failed to appear for his omnibus hearing scheduled in the case, resulting in a bench warrant. Because Finnegan failed to appear at his omnibus hearing, the district court also postponed the scheduled jury trial.

Trial was thereafter scheduled to begin on May 4, 2006. On the first day of trial, the jury was selected and the State called several witnesses, including M.F., the physician who examined M.F. after she reported the assault, and M.F.'s sister. At the end of that day, the court told the jury "[w]e are looking forward to wrapping this up tomorrow early afternoon." The court then instructed Finnegan and both attorneys to appear in the courtroom at 9 a.m. the next day.

On the morning of May 5, 2006, Finnegan did not appear. The district court held a hearing and the transcript reflects that Finnegan's trial counsel informed the court that Finnegan's mother had called and reported that Finnegan was in bed and nonresponsive. She thought Finnegan was having "a nervous breakdown," and she asked that transportation be provided

---

1. Minn.Stat. § 609.342, subd. 1(c) (2008) (defining first-degree criminal sexual conduct as sexual penetration in circumstances causing complainant to have a reasonable fear of imminent great bodily harm); Minn.Stat. § 609.344, subds. 1(b), (c) (2006) (defining third-degree criminal sexual conduct as sexual penetration of a victim between 13 and 15 years of age when the actor is more than 24 months older than the victim and sexual penetration is accomplished by use of force or coercion).

for him. The court ordered that officials "go get Mr. Finnegan, get some proper clothes on him, and get him to this courtroom as soon as possible."

The hearing resumed approximately one hour later. The prosecutor told the court that Sergeant Barry Fitzgibbons, who had been dispatched to transport Finnegan, reported that Finnegan's condition was "beyond an officer's ability." The prosecutor stated that Fitzgibbons believed Finnegan's state was due to a medical condition, likely an overdose, because there was no movement of Finnegan's legs; Finnegan was drooling; Finnegan's eyes had rolled back in his head; and Finnegan could not speak. The prosecutor reported that an ambulance was en route to pick Finnegan up.

The district court asked the State what its position was with regard to continuing with trial. The State requested to proceed, stating that Finnegan's absence was "a choice" and argued that Minn. R.Crim. P. 26.03 permitted the court to continue with trial. The State also cited considerations of expense and witness convenience. Finnegan's attorney objected to proceeding without Finnegan, citing his constitutional right to be present at trial, and asked the court to "find out more as to why he's in the hospital" and to ascertain Finnegan's condition.

The district court did not wait or investigate further but determined that Finnegan had voluntarily absented himself from trial. The court stated that Finnegan's "conduct of choosing to overdose or whatever he did to make himself in a stupor" waived his right to be present. The trial proceeded, and the State called five additional witnesses, including a DNA expert, M.F.'s mother, and the two officers who interviewed M.F. and collected related evidence. The defense rested without calling any witnesses.

The district court then excused the jury for lunch, and the court and the attorneys continued, on the record, to discuss Finnegan's absence. During this hearing, Finnegan's attorney noted, with regard to Finnegan's right to testify, that Finnegan was not present to make the decision. The court concluded that Finnegan waived his right to testify by failing to attend trial. The court also asked for an update on Finnegan's condition. The prosecutor reported that she learned from a police officer that Finnegan was unaware of his surroundings, unable to communicate, and still receiving medical treatment. The doctor preliminarily concluded that Finnegan had overdosed on sleeping pills, and the prosecutor said that Finnegan needed to remain in the hospital. The court then took the lunch recess.

Following the recess, but before the jury returned, the prosecutor made a record as to Finnegan's August 2005 failure to appear for court and the subsequent bench warrant that had been issued for his arrest. Closing arguments and jury instructions followed. Thereafter, the jury deliberated and returned guilty verdicts.

Three days later, on May 8, 2006, the district court held a hearing at which Finnegan was present. The court explained to Finnegan that his trial had continued in his absence because the court had "determin[ed] that it was by your own willful acts that you failed to appear for the second day of your trial." The court then gave Finnegan's attorney an opportunity to be heard, and counsel moved for a new trial "given that [Finnegan] wasn't available." Finnegan did not attempt to explain his absence or submit any evidence of explanation. The court denied the motion for a new trial.

The court next ordered a presentence investigation and a "sex offender evalua-

tion." The resulting psychologist's report, dated May 25, 2006, noted that Finnegan's absence from the second day of trial was "due to the influence of illicit substances and suicidal thinking." Additionally, the presentence investigation report stated that Finnegan's hospitalization "occurred ... as a result of [Finnegan's] attempting suicide."

On June 16, 2006, the district court held a sentencing hearing. The court gave Finnegan the opportunity to correct or add to the two reports discussed above. Finnegan's counsel stated that she had no corrections or additions to the reports. The court thereafter sentenced Finnegan to 144 months imprisonment.

On September 7, 2007, Finnegan filed a petition for postconviction relief, alleging prosecutorial misconduct and violation of his right to be present at trial. The postconviction court held that Finnegan was not entitled to postconviction relief. Specifically, the court concluded that the trial court had not erred in proceeding without Finnegan because Finnegan voluntarily and unjustifiably absented himself, and that there was no prosecutorial misconduct.

Finnegan appealed. The court of appeals held that no prosecutorial misconduct occurred. The court further held that a "defendant voluntarily and without justification absents himself from trial after trial has commenced by attempting suicide, and thereby, waives his right to be present at all stages of trial." *Finnegan v. State,* 764 N.W.2d 856, 858 (Minn.App. 2009). We subsequently granted Finnegan's petition for review on the question relating to his absence from trial.

 Finnegan contends that he is entitled to a new trial because, in allowing his trial to proceed without Finnegan, the district court violated his constitutional right to be present. The State contends that the postconviction court's finding that Finnegan was voluntarily and without justification absent from trial is not clearly erroneous. We review the postconviction court's legal determinations de novo. *Bonga v. State,* 765 N.W.2d 639, 642 (Minn.2009). But we will reverse the court's factual findings only if they are clearly erroneous. *Doppler v. State,* 771 N.W.2d 867, 875 (Minn.2009).

## I.

 A defendant has a constitutional right to be present at every stage of trial. *See State v. Martin,* 723 N.W.2d 613, 619 (Minn.2006); *State v. Cassidy,* 567 N.W.2d 707, 709 (Minn.1997); *see also* Minn. R.Crim. P. 26.03, subd. 1(1) ("The defendant must be present at ... every stage of the trial...."). Like other constitutional rights, the right to be present can be waived. *See, e.g., Martin,* 723 N.W.2d at 619; *State v. Ware,* 498 N.W.2d 454, 457 (Minn.1993). The right may be waived expressly or impliedly, and a court may imply waiver from a defendant's conduct. *Cassidy,* 567 N.W.2d at 709; *see also* Minn. R.Crim. P. 26.03, subd. 1(2). But the court must indulge every reasonable presumption against the loss of constitutional rights. *Cassidy,* 567 N.W.2d at 709 (citing *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)).

 Under the 2009 version of our rule of criminal procedure, if the court finds that the "defendant voluntarily and without justification absents himself ... after trial has commenced," the trial "shall not be prevented" from continuing "and the defendant shall be considered to [have] waive[d] the right to be present." Minn. R.Crim. P. 26.03, subd. 1(2)1 (2009) (amended Jan. 1, 2010). The defendant has the burden to prove that his absence was involuntary. *Cassidy,* 567 N.W.2d at

710. This burden is justifiably a "heavy" one because "[o]ur judicial system could not function if defendants were allowed to pick and choose when to show up for trial." *Id.* A criminal trial involves the coordination of numerous independent components, including attorneys, witnesses, court personnel, facilities, and jurors. Once these components have finally come together in a coordinated fashion to begin the trial process, the orderly administration of justice demands that the process be completed if possible.[2] Thus, our criminal rule provides that the progress of the trial "shall not be prevented" once the court has found that the defendant is absent voluntarily and without justification. Minn. R.Crim. P. 26.03, subd. 1(2) (2009) (amended Jan. 1, 2010).[3]

The district court made the finding under this rule that Finnegan's absence on May 5 was voluntary and without justification, and therefore the court ordered that the trial proceed in his absence. Finnegan argues that this ruling violated his constitutional right to be present. Specifically,

---

**2.** As Justice Tomljanovich noted in her dissent in *Cassidy,* "[w]hen a trial cannot be completed on schedule, there is a domino effect in regard to trials and hearings that have been scheduled weeks or months in advance. Witnesses, litigants, jurors and attorneys in other cases are required to try to adjust their schedules, often for proceedings that have been scheduled weeks and months in advance." 567 N.W.2d at 713 (Tomljanovich, J., dissenting).

**3.** The dissent suggests that we abandon our precedent and sua sponte adopt the "balancing approach" from *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.1972). Under this approach, after the court determines that the defendant has voluntarily absented himself from the trial, the court considers a second prong with a "complex of issues" before determining whether the trial should proceed. *Id.*

We disagree with the dissent for two reasons: first, we have addressed this issue before and have never directed district courts to consider a second prong after they make a determination that a defendant is voluntarily absent from trial. The Second Circuit adopted its balancing approach only after determining that the trial court had the discretion to decide whether proceedings should be held even where the court had determined the defendant was voluntarily absent. *Tortora,* 464 F.2d at 1210. We have never held that a district court is to address a second prong involving a "complex of issues" after determining a defendant is voluntarily absent from trial. Rather, under our precedent, a determination that a defendant was voluntarily absent from trial ends the analysis of whether the trial must continue. *See, e.g., State v.* *Worthy,* 583 N.W.2d 270, 277–78 (Minn.1998) (ending the analysis after concluding that because defendants failed to meet their burden of proving their absence from trial was involuntary, the district court did not abuse its discretion by continuing trial in their absence). Regardless of how federal courts have interpreted federal rules, our precedent gives effect to the word "shall" in the 2009 version of Minn. R.Crim. P. 26.03 by requiring a district court to continue a trial after determining a defendant is voluntarily absent. Second, the issue of whether we should adopt the federal balancing approach is not before us in this appeal. Finnegan did not argue the adoption of the federal balancing approach to the district court during trial, and he did not argue its adoption to the district court on postconviction review. Issues not raised before the district court are waived on appeal. *See State v. Kremer,* 307 Minn. 309, 312–13, 239 N.W.2d 476, 478 (1976). Further, Finnegan did not raise the issue in his petition for review to our court, which also waives the issue on appeal. *See In re GlaxoSmithKline PLC,* 699 N.W.2d 749, 757 (Minn.2005). Finnegan did not even cite *Tortora* in his briefs. He did cite *United States v. Benavides,* 596 F.2d 137 (5th Cir.1979), but he did not rely on *Benavides* to advocate that we should depart from our precedent and adopt the balancing approach the dissent advocates. Because our precedent and our rule do not provide for additional analysis after a district court's determination of voluntary absence and because the issue of whether we should adopt the federal balancing approach is not properly before us on appeal, we decline to adopt the *Tortora* approach created by the federal courts and suggested by the dissent.

Finnegan contends that he was absent because he attempted suicide and that an attempted suicide must always be an involuntary absence. He also argues that the district court erred in continuing the trial without giving him sufficient time to prove that this absence was involuntary. We examine each argument in turn.

### A.

We first consider Finnegan's argument that a suicide attempt is an involuntary absence and that therefore the district court's continuation of the trial without Finnegan violated his constitutional right to be present. When the district court determined that Finnegan's absence was voluntary, Finnegan's lawyer did not assert that the reason he was absent was because he had attempted suicide. After his conviction, however, Finnegan was interviewed as part of presentence-investigation procedures, and Finnegan told the investigator that he was hospitalized on May 5 because he had attempted suicide. A psychologist also interviewed Finnegan as part of the presentence investigation, and the psychologist's report reflects that on May 5 Finnegan was hospitalized "due to the influence of illicit substances and suicidal thinking." The reference to "illicit substances" is clarified later in the report as Finnegan's "being intoxicated on methamphetamine," and the reference to "suicidal thinking" is later described as Finnegan "being stressed due to his present legal predicament and having suicidal ideation."

■ Finnegan invites us to adopt a "clear and straightforward" rule of law

that "a suicide attempt does not constitute a voluntary and unjustified absence from trial." [4] But the question of whether a defendant is voluntarily absent from trial, like the question of whether a defendant voluntarily enters a guilty plea, is a factual determination. *See State v. Danh*, 516 N.W.2d 539, 544 (Minn.1994) (noting that the district court's conclusion that defendant's plea was voluntarily made was a "question of fact which will not be disturbed unless clearly erroneous"); *see also United States v. Crites*, 176 F.3d 1096, 1097–98 (8th Cir.1999) (rejecting claim that the suicide attempt was an involuntary absence and stating that an appellate court "review[s] the district court's finding on voluntary absence for clear error"); *United States v. Davis*, 61 F.3d 291, 300, 302 (5th Cir.1995) (rejecting claim that "apparent suicide attempt" was involuntary absence from trial and stating that "[w]e review the district court's finding that the defendant's absence is voluntary for clear error"). That the voluntariness question is one of fact is confirmed in *Cassidy*, where we recognized that the waiver of the right to be present at trial depends on the facts and circumstances of each case. *Cassidy*, 567 N.W.2d at 709. We reaffirm this case-specific and fact-driven approach today, and therefore reject Finnegan's invitation to adopt a rule that every defendant who attempts suicide during a criminal trial is involuntarily and justifiably absent from trial.[5]

### B.

■ We turn next to Finnegan's alternative argument that the district court vio-

---

**4.** Finnegan made this request for a categorical rule in his reply brief even though in his opening brief, Finnegan stated that "[t]he determination of whether an attempted suicide constitutes a voluntary waiver of the constitutional right to be present at trial is fact-specific."

**5.** The dissent's extensive discussion of the facts from several federal cases, addressing medical issues within the context of assessing whether an absence from trial is voluntary, confirms the wisdom of our fact driven approach.

lated his right to be present when the court continued with the trial in Finnegan's absence without an adequate investigation as to the circumstances of his absence. Specifically, Finnegan contends that at the time the court made this determination, it did not have sufficient information to conclude that his absence was voluntary, knowing only that Finnegan had overdosed and needed medical attention. According to Finnegan, the court should have complied with Finnegan's lawyer's request and delayed the trial for some undefined period to give Finnegan's lawyer an opportunity to provide more information to the court as to Finnegan's status. Because the court did not "fully and fairly investigate the circumstances" of his drug overdose, Finnegan argues he is entitled to a new trial.

■ We do not disagree with Finnegan that the district court, especially in light of Finnegan's lawyer's request, could have done a more thorough investigation into the nature of Finnegan's overdose. But this case comes to us after Finnegan had the opportunity on postconviction to satisfy his burden of proving that his absence was involuntary. As the California Court of Appeals said in *People v. Connolly*, 36 Cal.App.3d 379, 111 Cal.Rptr. 409, 413 (1973), "[t]he determination of the reviewing court [on the question of the defendant's absence from trial] must be based upon the totality of the facts; not just a portion of them." In that case, the appellate court reviewed the trial court's decision to proceed with the trial in the defendant's absence. The defendant argued that the trial court did not conduct an adequate investigation before it found that he was voluntarily absent from the trial, and that therefore he was entitled to a new trial. *Id.* at 412. Recognizing the practical constraints under which trial courts are operating when making the voluntari-

ness determination, the *Connolly* court concluded that the court's initial determination of voluntariness could be made based on a "prima facie showing of voluntary absence," but that the defendant would be allowed, when he returns to court, to challenge the court's earlier determination that his absence was voluntary. *Id.* at 412–13. The appellate court's review of the voluntariness question was developed on that question based on the entire record, not simply the record before the trial court when it made the initial ruling on voluntariness. *Id.* at 413.

The Washington Supreme Court has adopted a somewhat similar approach. There, the trial court is to follow a three-step process. First, the court must make "sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary"; second, the court is to "make a preliminary finding of voluntariness"; and, third, the defendant is afforded "an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed." *State v. Thomson*, 123 Wash.2d 877, 872 P.2d 1097, 1100 (1994); *see also State v. Elliott*, 126 Idaho 323, 882 P.2d 978, 983 (Idaho Ct.App.1994) (adopting three-prong approach from *Thomson*).

■ We agree that the processes set forth in *Connolly* and *Thomson* provide a workable framework for district courts to utilize when confronting the question of continuing with a trial in the defendant's absence. Where a defendant is absent from trial after the trial process has already commenced, the district court's factual finding on voluntariness must necessarily be made efficiently. But where the defendant contends that he has not been given an adequate opportunity to explain his absence, our postconviction process operates in a fashion similar to the process

outlined in *Connolly* and *Thomson*. For example, if on postconviction, the defendant meets his burden to demonstrate that his absence was involuntary, he would be entitled to a new trial unless the court could conclude that the erroneous continuation of the trial without the defendant was harmless beyond all reasonable doubt.[6] *See State v. Powers*, 654 N.W.2d 667, 681 (Minn.2003) (holding that defendant's absence from proceedings was harmless); *State v. Grey*, 256 N.W.2d 74, 77 (Minn.1977) (concluding that defendant was entitled to a new trial because defendant's absence from pretrial suppression evidentiary hearing "was not harmless beyond a reasonable doubt"). Accordingly, a district court that makes a finding on the voluntariness of the defendant's absence without an adequate investigation creates substantial risk of retrial. Clearly, the better practice is to pause the proceedings for as long as is reasonably necessary for the court to ascertain that the defendant's absence is truly voluntary.

In this case, the district court perhaps proceeded too quickly. But even if the district court's finding of voluntariness was unreasonably premature, Finnegan had the opportunity to demonstrate that his absence was involuntary both at the hearing on May 8, and at the postconviction stage. Finnegan did not avail himself of either of these opportunities. *Cf. State v. Martin*, 723 N.W.2d 613, 621 (Minn.2006)

(finding that defendant waived his right to be present because "[i]n contrast to *Cassidy*, Martin provided no evidence that he wanted to be present"); *Cassidy*, 567 N.W.2d at 710 (finding that defendant met his burden to prove that his absence was involuntary). Indeed, Finnegan waived his right to an evidentiary hearing at postconviction, and chose to rest on the record as it then existed.

Our review of that record establishes that the postconviction court's finding that Finnegan was voluntarily absent from his trial was not clearly erroneous. *See Crites*, 176 F.3d at 1097–98. The court found that Finnegan absented himself from trial by his own voluntary and unjustifiable action. We will not reverse findings of fact as clearly erroneous "if there is reasonable evidence to support them." *See Danh*, 516 N.W.2d at 544. Such support exists here.

The presentence investigation reports establish that on the morning of the second day of his trial, Finnegan was intoxicated on methamphetamine, and physically unable to come to his trial. Finnegan seemingly argues that he ingested methamphetamine because he was trying to commit suicide. But Finnegan offered no evidence that he was coerced into taking methamphetamine, that he accidentally overdosed, or that he was compelled to do

---

**6.** The dissent's discussion of structural error ignores our precedent. We have repeatedly recognized, and we do so again here, that an error in continuing with a trial in the defendant's absence is not a structural error, but is an error that is subject to harmless error analysis. *State v. Powers*, 654 N.W.2d 667, 681 (Minn.2003); *see also State v. Sessions*, 621 N.W.2d 751, 756–57 (Minn.2001) (addressing the defendant's presence in the context of the court's communications with a deliberating jury and concluding that defendant's absence was harmless error); *State v. Hudspeth*, 535 N.W.2d 292, 295 (Minn.1995)

(same). The dissent cites two of our cases for the proposition that a judge entering a jury room during deliberations is structural error, and implies that those cases should apply to cases involving a trial continued in a defendant's absence. *See Brown v. State*, 682 N.W.2d 162, 168 (Minn.2004); *State v. Mims*, 306 Minn. 159, 169–70, 235 N.W.2d 381, 388 (1975). But we have limited our holding in those cases to that very situation. *See State v. Martin*, 723 N.W.2d 613, 621 n. 8 (Minn. 2006) (limiting the holdings in *Brown* and *Mims* to cases involving judges entering jury rooms during deliberations).

so because of a mental illness. On the contrary, the postconviction record indicates that Finnegan was a heavy user of methamphetamine and had been regularly voluntarily using methamphetamine for a number of years. This amounts to reasonable evidence that Finnegan's absence on May 5 was voluntary. *Cf. State v. Gorman*, 113 Minn. 401, 404, 129 N.W. 589, 590 (1911) ("The defendant cannot take advantage of his own willful wrong to defeat the ends of justice, and must be held to have waived, by his misconduct, his right to be present....").

Because Finnegan did not demonstrate to the postconviction court that his absence from the trial was involuntary or justified, we hold that the postconviction court did not err in concluding that Finnegan waived his right to be present at his trial.

Affirmed.

ANDERSON, PAUL H. (dissenting).

I join in the dissent of Justice Meyer but write separately to highlight a significant concern that I have with the majority opinion. I agree with Justice Meyer's dissent that Finnegan did not knowingly and voluntarily waive his right to be present at trial, a right guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution. I further agree with Justice Meyer's dissent that Finnegan's absence was due to a "genuine medical emergency." But Finnegan's absence may well have been caused by more than just that. The record indicates that Finnegan was absent from trial because he had attempted to commit suicide.

The majority rejects a rule that any criminal defendant who attempts suicide is voluntarily and justifiably absent from trial. The majority purports to "reaffirm our case-specific and fact-driven approach" to voluntariness determinations. I do not disagree that determinations of voluntariness should be driven by facts. But I am very concerned with the majority's implication that a genuine suicide attempt might constitute a knowing and voluntary waiver of the right to be present at trial. I categorically oppose such a possibility and categorically reject any rule of law premised on this possibility.

When a district court undertakes a factual inquiry into the voluntariness of a defendant's absence from trial and, as a result of that inquiry, determines that the defendant was absent because he intentionally tried to end his own life, I would hold—as a matter of law and as a matter of common sense—that the defendant has not waived his right to be present at trial. In my view, voluntary absence from trial and suicide are fundamentally different and irreconcilable concepts. We should not conflate the two as I fear the majority has done here.

As Justice Meyer's dissent points out, the right of a defendant to be present at his trial is a longstanding right, the roots of which predate the creation of our country. On the other hand, our society's views on suicide, its causes, and ramifications are evolving and are thus less firmly rooted. In the past many people considered suicide to be a sin and several jurisdictions have treated it as a crime. Today, as we stand on the threshold of the second decade of the twenty-first century, we are more enlightened. By this I mean that society's views and attitudes toward suicide are more informed than they have been in the past. We now have a better understanding of the mental anguish, pain, and depression that can lead, indeed force, a person to consider taking his or her own life.

I had hoped that we had moved beyond the point that when a defendant who is scheduled for trial does not show up and is

found to be comatose, it is considered acceptable not to inquire into the defendant's medical condition and instead to say, whatever the medical condition, "this was a choice" and was "based on the defendant's own actions" and to then proceed with trial without the defendant present citing as one of the reasons that a State expert witness drove to trial at 5 a.m. I find it unacceptable that a district court could conclude, without further investigation as to the exact nature of his medical condition, that Finnegan "did voluntarily absent himself from the trial ... [by] his own volition" and, by this conduct, waived his right to be present at his own trial. I believe that we can and should do better than we have in this case. An attempt to take one's own life is not the same as electing to undergo nonemergency surgery on the eve of trial, *see United States v. Barton,* 647 F.2d 224, 238 (2d Cir.1981), or changing one's mind and electing to undergo bypass surgery nearly three months into trial because it is deemed strategically wise to do so, *see United States v. Edwards,* 303 F.3d 606, 624, 628–29 (5th Cir. 2002). A suicide attempt is more akin to a genuine medical emergency that is involuntary than it is to the foregoing types of voluntary acts. Therefore, I join Justice Meyer's dissent in concluding that Finnegan was improperly denied his right to be present at his trial, that the district court's error in denying him this right was not harmless, and that he is entitled to a new trial.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

MEYER, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

MEYER, Justice (dissenting).

I respectfully dissent. I would conclude that Jason Finnegan's midtrial hospitalization for a genuine medical emergency was not a voluntary and knowing absence from trial and that the trial court's determination that he waived his constitutional right to be present was clearly erroneous. Furthermore, proceeding with trial in Finnegan's absence was an abuse of discretion when an inquiry into the circumstances of his medical condition would have shown there was a very high likelihood that the trial could soon have taken place with him present. I would hold that Finnegan was improperly denied his right to be present at his trial, that the error was not harmless, and would grant a new trial.

I.

"In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him...." U.S. Const. amend. VI. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *cf. Hamdan v. Rumsfeld,* 548 U.S. 557, 624, 633–35, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (invalidating special military commission that denied "one of the most fundamental protections" afforded by the Uniform Code of Military Justice and the Geneva Conventions: the right to be present).

The right to be present is also guaranteed by the Due Process Clauses in the Fifth and Fourteenth Amendments:

> The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation,

reasonably substantial, to the fullness of his opportunity to defend against the charge." Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence."

*Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–08, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

The right to be present is one of those "basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client." *Taylor v. Illinois*, 484 U.S. 400, 417–18, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Nevertheless, the right can be lost by persistent disruptive conduct in the courtroom or by voluntary absence from trial. *Allen*, 397 U.S. at 343, 90 S.Ct. 1057 (courtroom conduct); *Taylor v. United States* 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (voluntary absence). In *Taylor v. United States*, defendant was present for the morning session of the first day of trial but failed to return for the afternoon session. 414 U.S. at 17, 94 S.Ct. 194. The court recessed the trial until the following morning, but defendant still failed to appear. *Id.* Defendant's wife testified that she had not heard from him since they left the courtroom the previous day and shared a taxicab. *Id.* The court found that defendant had absented himself voluntarily from the proceedings and ordered the trial to proceed without him. *Id.* at 17–18, 94 S.Ct. 194.

On certiorari review before the Supreme Court, there was no challenge to the trial court's conclusion that defendant's absence from trial was voluntary. Instead, defendant argued that "his mere voluntary absence" from trial could not be an effective waiver "unless it [was] demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him." *Id.* at 18–19, 94 S.Ct. 194. In rejecting this claim, the Court explained that it was patently obvious the defendant had the requisite knowledge:

> It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.

*Id.* at 20, 94 S.Ct. 194 (citation omitted) (internal quotation marks omitted).

## II.

"[C]ourts must indulge every reasonable presumption against the loss of constitutional rights." *Allen*, 397 U.S. at 343, 90 S.Ct. 1057 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Consequently, "[i]n deciding whether to try a defendant *in absentia*, the [trial] court must make factual findings to determine whether a defendant's absence is knowing and voluntary." *United States v. St. James*, 415 F.3d 800, 803–04 (8th Cir.2005). Upon determining that the absence is voluntary, the court then determines whether the public interest in proceeding with trial clearly outweighs the

interests of the voluntarily absent defendant. *Id.* at 804.

The trial court has the obligation to safeguard the defendant's fundamental right to be present at his own trial. *State v. Cassidy,* 567 N.W.2d 707, 711 (Minn. 1997). "[W]hen a court concludes that the right is voluntarily waived, it must set forth with some specificity its rationale for finding the constitutional right voluntarily, and without justification, waived and the facts supporting the rationale so that its conclusion can be properly reviewed on appeal." *Id.* (granting new trial when trial court failed to set forth rationale and factual basis for voluntariness determination).

The trial court's factual findings that defendant's absence was voluntary are reviewed for clear error. *United States v. Bradford,* 237 F.3d 1306, 1311 (11th Cir. 2001). "The ultimate issue of voluntariness is a legal question requiring independent ... determination." *Campbell v. Wood,* 18 F.3d 662, 672 (9th Cir.1994). The decision to proceed without a voluntarily absent defendant is reviewed for an abuse of discretion. *United States v. Davis,* 61 F.3d 291, 302 (5th Cir.1995).

### III.

At 8:50 a.m. on Friday, May 5, 2006, after learning that Finnegan was still in bed, the trial court ordered law enforcement to "get Mr. Finnegan, get some proper clothes on him, and get him to this courtroom as soon as possible." At 9:50 a.m., the State informed the court that Sergeant Fitzgibbons and another officer, dispatched to Finnegan's home, found him incapacitated:

> There was no motion of movement of his legs to actually get him to walk; they simply cannot do that in transport. [Sergeant Fitzgibbons] believed it to be a medical condition. He said if it was a normal call, it would have been the case

where he called the ambulance immediately. I indicated to do what he would normally do and he did call the ambulance. He believed, in his opinion, that it was likely an overdose because there was drooling at the mouth and the eyes were in the back of the head, that type of thing, so he was not able to speak at all to the defendant in any manner.

The State asked to proceed with trial in Finnegan's absence, arguing that Finnegan was voluntarily absent:

> I believe this was a choice. I don't know if we want to wait for a medical confirmation of an overdose, but based on the defendant's own actions, obviously present yesterday, understanding what we were doing today, that it was a choice he made to be in a condition not to proceed.... [F]or the record, the State has witnesses and expenses.... [T]he BCA expert drove here from 5:00 this morning and is present, ready to go, and certainly other witnesses are inconvenienced today and ready to proceed as well.... I would ask the Court to at least consider [Minn. R.Crim. P. 26.03] in us finishing up the trial without his presence.

Defense counsel responded:

> We don't know what the—what his medical condition is.... I think we need more information to prevent ... my client, from having the right to be present during this trial.... It's his constitutional right to be present and we need to find out more as to why he's in the hospital and what's his condition.

The trial court then ruled that

> [u]nder rule [26.03], subd. 2(1), I'm finding the defendant did voluntarily absent himself from trial. Clearly he was—had posted bond so he was out on his own— in his own volition and did something last night, according to his mother, and

the officers that arrived at his home found him to be unresponsive. He was aware that we were in trial, he was aware that he was supposed to be here today, and I'm also finding that his behavior, because he's not here, is disruptive. And there is case law that supports the fact that conduct is equivalent to a waiver of presence, and I'm finding that his conduct of choosing to overdose or whatever he did to make himself in a stupor today and not be here is conduct that is consistent with waiving his presence. And since we are in the trial and we've got the jury here and half of the evidence is in, we are going to go forward.

The evidentiary stage of the trial concluded around noon. Closing arguments, jury instructions, and jury deliberations followed the lunch break. At 4:39 p.m., the jury returned the guilty verdicts. Finnegan was released from the hospital two days later, Sunday, May 7, 2006. Medical records and subsequent psychological evaluation indicated that Finnegan's midtrial hospitalization followed a suicide attempt.

## Voluntary Absence

Trial courts "indulge every reasonable inference against a finding of voluntary absence." *United States v. Achbani*, 507 F.3d 598, 601 (7th Cir.2007). "Before proceeding, the district court must explore on the record any 'serious questions' raised about whether the defendant's absence was knowing and voluntary." *Id.* at 601–02 (quoting *United States v. Watkins*, 983 F.2d 1413, 1419 (7th Cir.1993)). Hospitalization due to illness raises serious questions as to whether the defendant's absence is voluntary. *See id.* at 602 (citing *United States v. Novaton*, 271 F.3d 968, 996–97 (11th Cir.2001)).

In a number of cases, following a record inquiry, an absence from trial for medical reasons was deemed a deliberate attempt to avoid trial and therefore voluntary. In *United States v. Barton*, a multi-defendant trial, defendant Barton elected to undergo nonemergency spinal surgery on the eve of trial. 647 F.2d 224, 238 (2d Cir.1981). At the hearing on Barton's motion for severance, Barton's physician testified that he had diagnosed Barton's condition some 17 months earlier, had thereafter unsuccessfully urged Barton to undergo surgery, and that Barton's recent request for surgery came "out of the blue." *Id.* The trial court determined that Barton's absence was voluntary and proceeded with trial in his absence. *Id.* The Second Circuit found no error in the trial court's conclusion. *Id.*

In *United States v. Davis*, another multi-defendant trial, defendant McBride attended the first week of trial. 61 F.3d 291, 300 (5th Cir.1995). When trial reconvened on Monday, McBride was not present. *Id.* The government reported that McBride had checked herself into the hospital on Sunday after allegedly ingesting antidepressants. *Id.* The trial court granted a recess to allow McBride's counsel a chance to talk to her and her physician, and apparently the court talked to the physician as well. *Id.* The court determined the absence was voluntary; but "in an abundance of caution," the court again spoke to McBride's physician before reconfirming its determination and proceeding with trial in her absence. *Id.* at 300. In affirming, the Fifth Circuit concluded that "McBride's failure to appear after the court delayed the trial a day and a half was a knowing and voluntary waiver of her right to be present." *Id.* at 303.

In *United States v. Edwards*, again a multi-defendant trial, defendant Johnson postponed bypass surgery, believing it was in his strategic interest "to go to verdict" with the other defendants. 303 F.3d 606, 625, 629 (5th Cir.2002). Nearly two

months into the trial, when the government began presenting evidence particularly damaging to Johnson, his medical condition worsened and surgery was required. *Id.* at 625. The government moved for trial in absentia; defense counsel initially moved for a continuance but then shifted positions and moved for a mistrial. The trial court held conferences, heard from Johnson's physicians, and postponed the trial for a week. *Id.* In denying Johnson's motion for mistrial, the court offered many accommodations, including frequent breaks, the presence of a nurse, participation through audio and video feeds, an additional attorney to advise Johnson from home, all at the court's expense, and permitting Johnson to testify as the last witness; but Johnson declined them. *Id.* at 626. Ultimately, the court granted the government's motion for trial in absentia, concluding that Johnson's absence was voluntary. *Id.* at 627. The court found that Johnson postponed surgery to gain a tactical advantage and that post-surgery legal maneuvers were "indicative of an unwillingness rather than an inability to continue with the trial." *Id.* In affirming, the Fifth Circuit concluded that the trial court's "determination that Johnson's absence was voluntary [was] not clearly erroneous." *Id.* at 629.

In other cases, an absence from trial caused by a genuine medical emergency was determined involuntary. In *United States v. Latham,* a single-defendant trial, defendant Latham was present for the first day but failed to appear in court at 9:00 a.m. the next day. 874 F.2d 852, 854 (1st Cir.1989). In chambers, the court inquired as to Latham's whereabouts, revoked Latham's bail, and issued a bench warrant for his arrest. *Id.* The chambers conference reconvened at 10:13 a.m. *Id.* The court noted that in the interim the United States Marshal's Office had been informed that Latham had boarded a plane bound for Chicago. *Id.* at 854–55. The court concluded that Latham had voluntarily absented himself and recommenced the trial at 10:30 a.m. *Id.* at 855.

The information about Latham's flight was false. *Id.* Latham had been hospitalized, in critical condition, due to a cocaine overdose; nevertheless, the trial court denied Latham's motion for a new trial. *Id.* On appeal, the First Circuit rejected the trial court's determination of a voluntary absence:

> It defies common sense to maintain that a sane defendant would attempt suicide to avoid a trial on drug charges. And, death is not the type of "voluntary absence from trial" that concerns us. Alternatively, if one were to find that Latham knew just the right amount of cocaine to ingest, so as to require hospitalization, but avoid death, it would still make no sense for him to have pursued this course because he would end up in custody (hospitalized) and upon recovery would still have to stand trial. This situation is markedly different from fleeing to avoid the trial altogether.

*Id.* at 858. The First Circuit held that Latham's ingestion of an overdose of cocaine did not constitute a voluntary absence from trial. *Id.* at 859.

In *United States v. Novaton,* a multi-defendant trial, defendant Rosell was hospitalized twice due to a sudden, incapacitating illness. 271 F.3d 968, 994 (11th Cir.2001). The trial court denied repeated motions from Rosell's counsel for a continuance or mistrial. *Id.* at 995–96. The Eleventh Circuit reversed and remanded for a new trial, finding clear error in the trial court's determination that Rosell's absence was voluntary. *Id.* at 1000. The Eleventh Circuit noted that the voluntariness determination was made before the trial court had "much information about

Rosell's condition" and that there was no dispute "Rosell's ailments during the last week of his trial were real. There is no contention that this is a case in which a defendant was faking an illness or otherwise attempting to scuttle a trial." *Id.* at 996–97.

Here, there was no inquiry into the circumstances of Finnegan's medical condition and no rationale, much less a factual basis, for the trial court's conclusion of a voluntary and knowing absence. *See Cassidy,* 567 N.W.2d at 710 (requiring a trial court to set forth a specific rationale and sufficient facts to support finding that a defendant's absence is voluntary and noting that an inadequate record makes review "virtually impossible"). The trial court failed to make the necessary inquiry to determine whether Finnegan's absence was voluntary. Moreover, there was no dispute that Finnegan's hospitalization was due to a genuine medical emergency. I would conclude that Finnegan's absence from trial was not voluntary. *See Latham,* 874 F.2d at 859; *Rice v. Wood,* 44 F.3d 1396, 1400–01 (9th Cir.1995) (holding that absence due to hospitalization after ingestion of liquid nicotine was involuntary), *vacated in part on other grounds,* 77 F.3d 1138, 1145 (9th Cir.1996); *cf. State v.*

*Anene,* 149 Wash.App. 944, 205 P.3d 992, 998 (2009) (holding that continuing with trial in absence of defendant who was comatose following suicide attempt violated due process).

### Abuse of Discretion

The trial court's determination of a voluntary absence does not end the inquiry. The Minnesota Rules of Criminal Procedure augment a defendant's constitutional right to be present at trial. Under Minn. R.Crim. P. 26.03, subd. 1, a defendant's presence at trial is required unless the defendant is absent without justification. When a defendant is absent voluntarily and without justification, the trial court may proceed in the defendant's absence.[1] Therefore, after determining that a defendant's absence is voluntary and without justification, a trial court exercises discretion in deciding whether to continue trial.

"A trial court has 'only a narrow discretion in deciding whether to proceed with a trial when the defendant is [absent] because the right to be present at one's own trial must be carefully safeguarded.'" *Cassidy,* 567 N.W.2d at 710 (quoting *United States v. Benavides,* 596 F.2d 137, 139 (5th Cir.1979)). When exercising that discretion, many courts continue with trial only

---

1. The version of Minn. R.Crim. P. 26.03, subd. 1(2) effective at the time of Finnegan's trial provides:

 (2) *Continued Presence Not Required.* The further progress of a trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to waive the right to be present whenever:
 1. a defendant voluntarily and without justification absents himself or herself after trial has commenced.

 This version of the rule is based on a similarly worded prior version of Fed.R.Crim.P. 43. Minn. R.Crim. P. 26 cmt. (2009). The prior version of the federal rule has been read as affording the court discretion to proceed in the defendant's absence and not as a mandate

to do so. *See, e.g., St. James,* 415 F.3d at 804; *Edwards,* 303 F.3d at 629; *Latham,* 874 F.2d at 859–60. Advisory Committee Notes dating back to the federal rule's adoption in 1944 underscore that the district court exercises discretion in determining whether to proceed in a defendant's voluntary absence. *See* Fed. R.Crim.P. 43 advisory committee's note.

On January 1, 2010, Minn. R.Crim. P. 26.03 was amended. The current version provides that a "trial may proceed to verdict without the defendant's presence if [t]he defendant is absent without justification." Minn. R.Crim. P. 26.03, subd. 1(2). The current version more directly states that Minn. R.Crim. P. 26.03 provides district courts discretion in determining whether to proceed in a defendant's absence.

when the public interest in proceeding with trial clearly outweighs the interests of the voluntarily absent defendant in attending his trial. *See, e.g., St. James,* 415 F.3d at 804. In deciding whether to proceed, the court determines a "complex of issues," including "the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, ... [and] the burden on the Government...." *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.1972); *see also Benavides,* 596 F.2d at 140 (recognizing *Tortora* factors and adding inconvenience to jurors); *cf. Cassidy,* 567 N.W.2d at 712 ("Once a trial court properly finds waiver, we must determine whether it appropriately exercised its discretion in concluding that there was a controlling public interest in the continuance of the trial in the absence of the defendant.") (Tomljanovich, J., dissenting).

The *Tortora/Benavides* balancing approach gives effect to Fed.R.Crim.P. 43, a similarly worded version of Minn. R.Crim. P. 26.03. *Clark v. Scott,* 70 F.3d 386, 389–90 (5th Cir.1995). Courts from other jurisdictions have employed the balancing approach under the federal rule and analogous state rules in deciding whether to proceed with trial when the defendant was voluntarily absent. *E.g., Bradford,* 237 F.3d at 1314; *United States v. Nichols,* 56 F.3d 403, 417–18 (2d Cir.1995); *Latham,* 874 F.2d at 859; *United States v. Rogers,* 853 F.2d 249, 252 (4th Cir.1988); *Bradshaw v. State,* 806 A.2d 131, 136–37 (Del. 2002); *State v. Clements,* 108 N.M. 13, 765 P.2d 1195, 1200–01 (N.M.Ct.App.1988); *People v. Parker,* 57 N.Y.2d 136, 454 N.Y.S.2d 967, 440 N.E.2d 1313, 1317 (1982). *But see United States v. Houtchens,* 926 F.2d 824, 827 (9th Cir.1991); *Moore v. State,* 670 S.W.2d 259, 261 (Tex. Crim.App.1984); *State v. Thomson,* 123 Wash.2d 877, 872 P.2d 1097, 1100–01 (1994). The *Tortora/Benavides* approach

affords courts the necessary breathing space to ascertain the explanation for the defendant's absence, and consider the likelihood the trial could soon proceed with the defendant present, the difficulty of rescheduling, and the burden on the government.

As Finnegan contended in his briefs to the court of appeals and this court, the trial court should have considered whether the public interest in proceeding with trial clearly outweighed his interest in attending trial. On balance, I would conclude that Finnegan's interest was greater here. Even assuming Finnegan voluntarily absented himself from trial on Friday, had there been an inquiry into his medical status and the difficulties and burdens in continuing the trial on Monday, there was a very high likelihood the trial could have taken place with Finnegan present. Finnegan was convicted in his absence of a particularly serious offense. The mandatory minimum prison term for an offender like Finnegan with a criminal history score of zero is 144 months, roughly the equivalent for second-degree murder, followed by the prospect of indeterminate civil commitment. Minn.Stat. §§ 253B.02, subd. 18(c), 253B.18, subd. 3, 609.342, subd. 2(b) (2008); Minn. Sent. Guidelines IV.

Overall, I would conclude that Finnegan's absence was not voluntary because it was due to a genuine medical emergency. I would further conclude that proceeding with trial in Finnegan's absence was an abuse of discretion, given the minimal delay that might have been required to proceed with Finnegan present. I would hold that proceeding with trial in Finnegan's absence was constitutional error and an abuse of discretion.

## IV.

### Structural Error

" '[M]ost constitutional errors can be harmless.' " *Neder v. United States,* 527

U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). " '[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.' " *Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). In rare cases, however, an error is designated as structural, requiring automatic reversal. Typically, structural error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Rivera v. Illinois*, —— U.S. ——, 129 S.Ct. 1446, 1455, 173 L.Ed.2d 320 (2009) (citations omitted) (internal quotation marks omitted).[2] Proceeding with crucial government testimony and concluding the trial in Finnegan's absence may well be one of those rare situations that could be designated as structural error.

### Harmless Error

"[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824. "The State bears the burden of proving that an error passes muster under this standard." *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also Chapman*, 386 U.S. at 24, 87 S.Ct. 824 ("[T]he original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.").

"[O]nce the defendant has established a violation of that right [to be present] his conviction is unconstitutionally tainted and reversal is required unless the State proves the error was harmless beyond a reasonable doubt." *Novaton*, 271 F.3d at 998–99 (quoting *Proffitt v. Wainwright*, 685 F.2d 1227, 1260 n. 49 (11th Cir.1982)). The State makes no claim that proceeding with trial in Finnegan's absence was harmless. Given that Finnegan lost the right to personally confront five government witnesses, lost the right to testify or personally waive that right, and lost the right to be present for the return of the verdicts, prejudice was clearly evident. *See Novaton*, 271 F.3d at 999 (noting that defendant missed "crucial" stages of his trial, including testimony of witnesses called by the government and witnesses called by some codefendants). I would conclude that Finnegan's rights under the Confrontation

**2.** *E.g., Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (constitutionally deficient reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 263–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in grand jury selection); *Faretta v. California* 422 U.S. 806, 835–36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (denial of self-representation); *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (denial of

impartial judge). Minnesota cases directly implicate structural error analysis in cases regarding a judge's role in trial proceedings. We have held that structural error occurs when a defendant is absent when a judge communicates with deliberating jurors. *Brown v. State*, 682 N.W.2d 162, 168 (Minn. 2004) (holding that trial judge's visits to jury room during deliberations, in violation of defendant's right to be present at all stages of the proceedings, required automatic reversal); *State v. Mims*, 306 Minn. 159, 169–70, 235 N.W.2d 381, 388 (1975) (same).

Clause and Due Process Clause were violated by continuation of the trial in his absence, that the violations were not harmless beyond a reasonable doubt, and therefore that a new trial is required.

## V.

I disagree with the majority's framework for trial in absentia that, as I understand it, (1) requires an expeditious determination on voluntariness of the absence from trial; (2) allows the defendant an opportunity, in postconviction proceedings, to explain his absence; and (3) "if on postconviction, the defendant meets his burden to demonstrate that his absence was involuntary, he would be entitled to a new trial unless the court could conclude that the erroneous continuation of the trial without the defendant was harmless beyond all reasonable doubt." *State v. Finnegan,* 784 N.W.2d 243, 251 (Minn.2010).

*People v. Connolly,* cited by the majority, involved a defendant who failed to appear in court on the second day of his trial. 36 Cal.App.3d 379, 111 Cal.Rptr. 409, 411 (1973). After delaying the trial 4–1/2 hours, the court held a hearing at which defendant's wife and neighbor testified that they were unable to locate defendant despite a search in those places they reasonably expected him to be. *Id.* Neither the prosecutor nor defense counsel had received any calls from defendant. *Id.* The trial court found defendant was voluntarily absent and proceeded with trial. *Id.*

Defendant moved for a new trial and provided an explanation for his absence that "border[ed] on the inherently incredible." *Id.* at 413–14. In affirming the voluntariness determination, the California Court of Appeal said:

When looking to the initial proceedings involving the determination to proceed with trial, sufficient facts must be before the court to establish what reasonably appears to be a prima facie showing of voluntary absence. In the usual case a continuation of at least a few hours in order to locate defendant is appropriate. Once the defendant is again before the court he may challenge the propriety of proceeding in his absence. In this regard he can testify and present other evidence on the issue of whether his absence was in fact voluntary. On appeal the reviewing court must determine, on the whole record, whether defendant's absence was knowing and voluntary.

*Id.* at 412–13.

*State v. Thomson,* also cited by the majority, involved a defendant who notified his attorney's office that a medical emergency would prevent his presence in court that day. 123 Wash.2d 877, 872 P.2d 1097, 1099 (1994). Defendant's mother, with whom he lived, had not heard from him and did not know where he was. *Id.* The court delayed trial so that defendant might be located. *Id.* When the court reconvened, defendant was still absent. *Id.* The court found defendant's absence was voluntary, stating that an additional 3–1/2 hours had passed without any indication where defendant might be, and proceeded with the trial. *Id.*

The Washington Supreme Court affirmed, stating that under its voluntary waiver approach, the court only needs to answer one question: "whether the defendant's absence is voluntary." *Id.* at 1100.

The trial court will

(1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary,

(2) [make] a preliminary finding of voluntariness (when justified), and

(3) [afford] the defendant an adequate opportunity to explain his absence when

he is returned to custody and before sentence is imposed.

*Id.*

Both *Connolly* and *Thomson* require inquiry into the circumstances of the defendant's absence sufficient to justify an initial finding of a voluntary absence and an opportunity prior to sentencing to "challenge" or "rebut" the voluntariness determination. Neither *Connolly* nor *Thomson* suggests that the voluntariness determination be made in haste or place the burden on the defendant to demonstrate, in a postconviction proceeding, that the absence was involuntary and, if so, that the error in proceeding in his absence was not harmless beyond a reasonable doubt.

Clearly, the defendant who absconds, and who cannot be located despite all reasonable efforts, should have the burden of showing that his absence from trial was not voluntary. In that situation, the factual basis for a claim of an involuntary absence would be particularly within the defendant's knowledge. *E.g., Cassidy,* 567 N.W.2d at 710 (stating that defendant who absconded midtrial had the burden of showing that his absence was involuntary). But when the defendant's absence is due to a medical emergency and his whereabouts are known, given the trial court's obligation to safeguard the defendant's right to be present, inquiry should be made as to the defendant's medical status and the likelihood of continuing the trial without undue delay with the defendant present.

The majority states that Finnegan "had the opportunity to demonstrate that his absence was involuntary both at the hearing on May 8, and at the postconviction stage," but failed to "avail himself of either of these opportunities." 784 N.W.2d at

251. At the May 8 court appearance, the following occurred:

> THE COURT: Mr. Finnegan, just to let you know, it was the Court's determination that it was by your own willful acts that you failed to appear for the second day of your trial. And because of your own acts, you made yourself unavailable and our jury was seated, the trial was nearly completed, and it was my decision that we would go forward with the trial without your presence, so that's what we did. [Defense counsel], any comments?
>
> [DEFENSE COUNSEL]: Just for the record, your Honor, we would demand a new trial in this matter given that he wasn't available.
>
> THE COURT: All right. So noted. [Prosecutor]?
>
> [PROSECUTOR]: Obviously State opposes, your Honor.
>
> THE COURT: Well, I'm going to deny your motion. We'll see you back here on June 16. Mr. Finnegan, your sex offender evaluation will really—the results of that evaluation will be determinant on your ability to be truthful and open with your evaluator, so I suggest that you do that. All right?
>
> MR. FINNEGAN: Yep.
>
> THE COURT: Okay. Thank you.

The proceedings then concluded. I do not read that Rule 3 exchange as an opportunity for Finnegan to explain his absence, much less demonstrate that his absence was legally involuntary. *See* Minn. R.Crim. P. 3.02.

As for the postconviction stage, this appeal is Finnegan's first substantive review. "[A] first review by postconviction proceeding is substantially similar in scope to a direct appeal." *Deegan v. State,* 711 N.W.2d 89, 94 (Minn.2006).[3] In a first

---

3. Generally, a direct appeal must be taken within 90 days after final judgment. Minn.

review by postconviction, we review the findings and conclusions of the trial court and the postconviction court. *Butala v. State*, 664 N.W.2d 333, 339–41 (Minn.2003) (reviewing trial court's and postconviction court's findings and conclusions on presentence motion to withdraw guilty pleas). Whether the appeal is from the judgment or from a postconviction order, we review factual findings for clear error and questions of law de novo. *E.g., Doppler v. State*, 771 N.W.2d 867, 875 (Minn.2009) (reviewing factual findings for clear error in postconviction appeal); *Bonga v. State*, 765 N.W.2d 639, 642 (Minn.2009) (reviewing questions of law de novo in postconviction appeal); *State v. Brown*, 606 N.W.2d 670, 674–75 (Minn.2000) (reviewing trial court's factual findings for clear error and questions of law de novo in direct appeal).

"[W]hen a constitutional right as fundamental as the right to be present at one's own trial is implicated, the trial court has an obligation to safeguard that right." *Cassidy*, 567 N.W.2d at 711. Judicial restraint and caution require inquiry into the circumstances of an absence from trial due to a medical emergency. *E.g., Davis*, 61 F.3d at 300–01. When a court concludes the absence is voluntary, "it *must* set forth with some specificity its rationale for finding the constitutional right voluntarily, and without justification, waived and the facts supporting the rationale so that its conclusion can be properly reviewed on appeal." *Cassidy*, 567 N.W.2d at 711 (emphasis added); *accord St. James*, 415 F.3d at 804 ("the [trial] court *must* make factual findings to determine whether a defendant's absence is knowing and voluntary" (emphasis added)). To give effect to the discretion granted to the court under Minn. R.Crim. P. 26.03, subd. 1(2), I would add the *Tortora/Benavides* balancing approach to the inquiry.[4]

In my view, the *Cassidy* record inquiry into the circumstances of the defendant's absence from trial and a balancing of the respective interests and concerns would be

---

R.Crim. P. 28.02, subd. 4(3). Judgment of Finnegan's conviction was entered on June 16, 2006. An indigent wanting to appeal must make application to the State Public Defender, who determines whether the applicant is eligible for representation. *Id.*, subd. 5(1), (5). Finnegan did not appeal from the judgment. On September 7, 2007, he filed a petition for postconviction relief through counsel from the Office of the State Public Defender.

4. This is not a break from precedent. Minnesota has neither adopted nor rejected the *Tortora/Benavides* balancing approach. In *Cassidy*, the record was insufficient for determining the voluntariness of defendant's absence. 567 N.W.2d at 710–11. In *State v. Gillam*, defendant lost his right to be present by persistent disruptive conduct in the courtroom. 629 N.W.2d 440, 451–52 (Minn. 2001). In *State v. Worthy*, defendants fired their court-appointed attorneys and refused to participate in the trial despite the court's endeavors to obtain their presence, all as part of a tactical attempt to delay their trial.

583 N.W.2d 270, 277–78 (Minn.1998). As I read *Worthy*, we collapsed the inquiry, concluding defendants' absence to have been voluntary and trial in absentia not an abuse of discretion for the same reason: defendants were simply trying to delay their trial. *Id.* Additionally, Rule 26.03 clearly affords district courts discretion in determining whether to proceed without a voluntarily absent defendant. The *Tortora/Benavides* approach offers a sound manner in which to exercise that discretion. The approach includes "[a] number of factors [that] help to determine if there is a controlling public interest in the continuation of a trial. These factors include the likelihood that the trial can take place with the defendant present, the difficulty of rescheduling, the burden on the government and inconvenience to jurors." *Cassidy*, 567 N.W.2d at 712 (Tomljanovich, J., dissenting) (citations omitted) (internal quotation marks omitted). Neither Rule 26.03 nor precedent requires, as the majority suggests, that a court continue with trial once a defendant's absence is determined to be voluntary.

a far more efficient use of judicial resources than expending additional resources in postconviction hearings aimed at reclaiming the constitutional right. More fundamentally, the record inquiry maintains the obligation in safeguarding the basic right to be present with the trial court. Transferring that responsibility to the defendant when a trial court disregards the *Cassidy* mandate devalues *Cassidy*.

In summary, I would conclude that Finnegan's midtrial hospitalization on Friday due to a genuine medical emergency was not voluntary; that the trial court's conclusion to the contrary, made without inquiry, was clearly erroneous; and that the error was not harmless in view of the critical stages of trial Finnegan missed. I would also conclude that proceeding with trial in Finnegan's absence was an abuse of discretion where inquiry into his medical status and the difficulties in continuing the trial on Monday would have indicated there was a very high likelihood the trial could have taken place with Finnegan present. In light of all the circumstances in this case, I would hold that Finnegan was wrongly deprived of his right to be present at his own trial and grant a new trial.

PAGE, Justice (dissenting).

I join in the dissent of Justice Meyer.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.