

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1723-12

### DAVID EARL BROWN,

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**PRICE, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

An accused has a constitutional right to be present in the courtroom at every stage of his trial.[1] Even an accused who is present in body may nonetheless be deprived of that basic right if he is of sufficiently unsound mind that he lacks the ability to participate meaningfully in his own defense or to rationally comprehend what is happening around him, and such an

---

[1] *Illinois v. Allen*, 397 U.S. 337, 338 (1970).

accused cannot be made to stand trial under those circumstances consistent with due process.[2]

This is not to say that the constitutional right to be present at trial can never be forfeited; an

accused who is of sound mind but who voluntarily absents himself after his trial has begun,[3]

or who persists in disruptive or otherwise contumacious behavior during the course of his

trial,[4] may lose his right to complain later that he was tried *in absentia*. And it is no great

leap from this last proposition also to conclude that an accused who is of sound mind when

his trial begins, but who, during the course of trial, takes some deliberate action to render

himself of *unsound* mind, should be estopped from later complaining that he has been put to

trial without the ability to participate meaningfully in his defense or to rationally comprehend

the proceedings against him. The question presented in this case, it seems to me, thus boils

---

[2] *Pate v. Robinson*, 383 U.S. 375, 378 (1966).

[3] *Taylor v. United States*, 414 U.S. 17, 19-20 (1973); *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985).

[4] *See Allen*, 397 U.S. at 343 ("Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.") (citation omitted). The Supreme Court expressly endorsed the notion in *Allen* that "the privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct." *Id*. at 342-43 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934), and noting with apparent approval Rule 43 of the Federal Rules of Criminal Procedure, which expressly provides that a criminal trial may proceed to its conclusion in the event that the defendant should voluntarily absent himself). *See* TEX. CODE CRIM. PROC. art. 33.03 (trial may "proceed to its conclusion" if the defendant "voluntarily absents himself" after trial has commenced).

down to whether the appellant was of sufficiently sound mind when he took the action that the trial court has construed to be a deliberate attempt to absent himself—both physically *and* mentally—from his trial.

I do not think that we would want to say that the appellant "voluntarily" absented himself, and that he should therefore be estopped from raising a Sixth Amendment or due process complaint, if his choice to try to take his own life was primarily the product of a debilitating mental illness.[5] But in the context of voluntariness, the appropriate inquiry is not whether the appellant could cooperate with counsel and/or comprehend the proceedings. Strictly speaking, these considerations do not directly inform the question of whether the action he took to absent himself (both in body and mind) after the inception of the trial proceedings was voluntary. It therefore strikes me as inappropriate to remand this cause for a competency hearing under Chapter 46B of the Code of Criminal Procedure.[6] In my view, we should instead ask whether an adequate inquiry was undertaken into the question of the appellant's mental condition with respect to the voluntariness of his apparent suicide attempt.

---

[5] *See Peacock v. State*, 77 So. 3d 1285, 1290 (Fla. Dist. Ct. App. 2012) ("Although a suicide attempt could be deemed voluntary in some circumstances, a suicide attempt could also be an involuntary product of mental illness."); *State v. Finnegan*, 784 N.W.2d 243, 251-52 (Minn. 2010) (rejecting a claim that the defendant's mid-trial suicide attempt was involuntary, in part, because, though given an opportunity to do so in post-conviction proceedings, he "offered no evidence that he was coerced into taking methamphetamine, that he accidentally overdosed, or that he was compelled to do so because of a mental illness").

[6] TEX. CODE CRIM. PROC. ch. 46B.

If his suicide attempt was not, in fact, "voluntary"—that is to say, not the product of a free will unencumbered by the undue pressures that may be exerted on the mind by a *bona fide* and debilitating mental illness—then the trial court erred to proceed to trial in the appellant's absence in violation of his Sixth Amendment right to be *physically* present, regardless of whether he was mentally competent to stand trial.

This view is entirely consistent with *Drope v. Missouri*.[7] *Drope* does not support the proposition that a mid-trial suicide attempt, without more, necessarily raises an issue of competency to stand trial. During the course of his trial for a sexual assault perpetrated against his wife, Drope shot himself in the abdomen. But Drope's self-inflicted gunshot wound was only the culmination of a host of circumstances suggesting irrationality on his part, which led the Supreme Court to conclude that a mid-trial inquiry should have been conducted into his competency to stand trial. For example, the Supreme Court observed:

> [W]e believe the Missouri courts failed to consider and give proper weight to the record evidence. Too little weight was given to the testimony of petitioner's wife that on the Sunday prior to trial he tried to choke her to death. For a man whose fate depended in large measure on the indulgence of his wife [who, by Missouri law, could not be compelled to testify against him], who had hesitated about pressing the prosecution, this hardly could be regarded as rational conduct.[8]

It is true that the Missouri appellate court had held that, standing alone, Drope's "suicide

---

[7] 420 U.S. 162 (1975).

[8] *Id*. at 179.

attempt did not create a reasonable doubt of his competence as a matter of law[.]"[9] But the Supreme Court did not weigh in on the validity of this specific proposition, merely holding that the totality of the evidence, culminating in Drope's mid-trial suicide attempt, was sufficient to place Drope's competency in doubt.[10]

Having concluded in *Drope* that a competency inquiry was constitutionally required, the Supreme Court accordingly found it "unnecessary to decide whether . . . it was constitutionally impermissible to conduct the remainder of [Drope's] trial on a capital offense in his enforced absence from a self-inflicted wound."[11] The Supreme Court did note,

---

[9] *Id*. at 170.

[10] *See id.* at 181 ("Whatever the relationship between mental illness and incompetence to stand trial, in this case the bearing of the former on the latter was sufficiently likely that, in light of the evidence of [Drope's] behavior *including his suicide attempt*, and there being no opportunity without his presence to evaluate that bearing in fact, the correct course was to suspend the trial until such an evaluation could be made.") (emphasis added); *see also People v. Price*, 240 P.3d 557, 562 (Colo. App. 2010) ("A defendant's suicide attempt alone is not necessarily sufficient to establish a 'bona fide doubt' as to a defendant's competency to stand trial[,]" *Drope* notwithstanding); *United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995) ("[I]n *Drope*, the Supreme Court expressly refused to decide whether an attempted suicide itself creates 'reasonable cause' for a competency hearing.").

[11] *Drope*, 420 U.S. at 182. The Supreme Court did not, thereby, "clearly ma[k]e competence to stand trial the first issue to be resolved." *Contra* Majority Opinion at 13.

Drope's suicide attempt was but the last of an "aggregate of . . . indicia" suggesting that he might have been incompetent from the very outset of his trial. *Drope*, 420 U.S. at 180. When the Supreme Court decided that "a nunc pro tunc determination" of competency *vel non* would not be adequate six years after Drope's original trial, it became necessary to reverse his conviction and remand the cause for an entirely new trial. *Id*. at 183. Under these circumstances, there was simply no need to also decide whether Drope's right to be physically present for that portion of his trial following his suicide attempt had been violated (or, indeed, whether such a violation would necessitate a new trial). *Drope* neither held nor otherwise supports the proposition that whenever both

however, that "what we have already said" with respect to the issue of Drope's competency "makes it clear that there was an insufficient inquiry to afford a basis for deciding the issue of waiver" of his Sixth Amendment right to be present.[12]

In the instant case, unlike in *Drope*, there is little (if any) record evidence, apart from, or in addition to, the appellant's attempted suicide itself, to suggest a level of irrationality sufficient to engender doubt as to whether he might have been incompetent, and hence *mentally* absent, *before* he shot himself. And if he became absent (both bodily and mentally) only by virtue of having shot himself, then it seems to me that the only issue to be decided is whether he absented himself *voluntarily*. Under these circumstances, I fail to see the utility of remanding the cause to the trial court with instructions to proceed with a retrospective determination of the appellant's competency to stand trial. If we are to remand the cause to the trial court at all, it should be only for a more thorough inquiry into the voluntariness of the appellant's act by which he rendered himself unable to attend the balance of his trial. In the words of *Drope* itself, we could remand for a more searching exploration of the appellant's "capacity *effectively* to waive his right to be present" at the time he inflicted the gunshot wound on himself,[13] focusing particularly on the extent to which any debilitating

---

competency and the right to be physically present at trial are in issue, a reviewing court is obliged to address the competency issue first.

[12] *Id*. at 182.

[13] *Id*. at 183 (emphasis added).

mental illness may have fueled his attempted suicide. Should the trial court find that the appellant's choice to shoot himself was too much the product of a debilitating mental illness to be fairly deemed a *voluntary* absence from trial, then it cannot be said that he "waived" his constitutional right to be present at trial,[14] and we should require the trial court to conduct a new trial. For, in that event, the trial court's insistence on trying the case to completion in the appellant's absence deprived him of his Sixth Amendment right to be physically present at every phase of his trial. But in the event that the trial court should find, instead, that the appellant's choice to shoot himself was wholly voluntary, notwithstanding any mental illness he might have suffered from, then the appellant's original conviction should stand, regardless of the outcome of any inquiry this Court may order into his competency under Chapter 46B.[15]

---

[14]

In *Taylor*, the issue was whether, by voluntarily absenting himself during trial, it could be said that Taylor "waived" his Sixth Amendment right to be present, in the sense that a "waiver" is typically defined to be "an intentional relinquishment or abandonment of a known right or privilege." 414 U.S. at 19 (internal quotation marks omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Taylor insisted that no such waiver could have occurred, even if his absence was voluntary, because he was neither formally informed of his right to be present nor formally asked whether he desired to waive it. The Supreme Court rejected the proposition that a waiver of the right to be present must be so formal and could not be established by the mere fact that the defendant voluntarily absented himself under circumstances suggesting that he was undoubtedly aware of his constitutional right to attend all phases of his trial. *Id*. at 20.

[15]

At first blush, this may seem at odds with the Supreme Court's observation in *Pate* that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." 383 U.S. at 384. Not so. As noted earlier, there is no suggestion in the record that the appellant was incompetent to stand trial before he shot himself in the head. If his suicidal act was voluntary in the sense that it was not a product of any debilitating mental illness, then there is nothing to show that he lacked the capacity to waive his right to a competency determination by willfully absenting himself, both in body and mind, from the balance of the trial proceedings.

For, if the appellant intentionally rendered himself absent by his own willful misconduct, then he essentially "waived" his right to be present—both in body *and* in mind—and the issue of his competency to stand trial becomes moot.[16]

Because the Court remands this cause to the trial court to conduct what is effectively, in my view, a needless competency determination, I respectfully dissent.

FILED:      March 19, 2014
PUBLISH

---

[16] There is no more question that the appellant was aware of his Sixth Amendment right to be present at all phases of his trial than there was for Taylor. *See* note 14, *ante*.